UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

K.E.O.,                                                                                              Petitioner,

v.                                                                              Civil Action No. 4:25-cv-74-RGJ

JASON WOOSLEY, Grayson County Jailer;
SAMUEL OLSON, Field Office Director for U.S.
Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary,
U.S. Department of Homeland Security,                                      Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner K.E.O.'s Writ of Habeas Corpus. [DE 1]. Respondents responded on August 1, 2025. [DE 8]. Petitioner replied on August 5, 2025. [DE 10]. The Court then held a Show Cause Hearing on August 7, 2025. Petitioner was granted use of a pseudonym to protect against potential retaliation. [DE 13]. After the hearing, the Court ordered further briefing. [DE 13]. Both parties obliged. [DE 17, DE 18]. Most recently, Petitioner has submitted two Notices of Supplemental Authority. [DE 20, DE 21]. This matter is ripe for adjudication. For the reasons below, the Court will **GRANT** K.E.O.'s Petition for a Writ of Habeas Corpus.

### I.      Background

Petitioner K.E.O. was born in 1992, in Mexico, and brought to the United States when she was approximately 5 years old. [DE 1 at 5]. K.E.O. was allegedly trafficked into the United States for forced labor and used as an informal contract interpreter. [DE 1 at 5]. In 2008, due to the alleged pressure from her traffickers, K.E.O. served as a getaway driver for several robberies, in the hopes this new income would satisfy her traffickers. [DE 1 at 6]. Within two years of these robberies, K.E.O. was arrested and ultimately convicted. [DE 1 at 6]. K.E.O. received a sentence of 24 years in prison. She served 11 years of the sentence before being paroled, and thereafter removed to

Mexico in 2021. [DE 1 at 6,7]. K.E.O. returned to the United States without admission a few months later and reconnected with her partner. [DE 1 at 7].

Two years later, DHS officers arrested K.E.O. [DE 1 at 7]. U.S. Immigration and Customs Enforcement ("ICE") detained K.E.O. and charged her with illegal re-entry. [DE 1 at 7]. K.E.O. was pregnant when detained, and while still in custody, K.E.O. gave birth to her daughter. [DE 1 at 7]. After K.E.O. pled guilty, District Judge Damon R. Leichty imposed a sentence of time served, and allowed K.E.O. to remain free, subject to further immigration proceedings. [DE 1 at 7]. In part, Judge Leichty relied on ICE Directive 11032.4: *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals*. [DE 1 at 8]. ICE had come to a similar conclusion, on March 20, 2024, and independently determined that K.E.O. may remain within the United States and placed K.E.O. on an Order of Supervision ("OSUP") with GPS monitoring. [DE 1 at 8]. The next month, K.E.O. met with the National Immigrant Justice Center to discuss her childhood trauma. [DE 1-9]. Shortly thereafter, K.E.O. filed a T Visa application, which is for victims of human trafficking with the United States Citizenship and Immigrant Services ("USCIS"). [DE at 9]. If approved, K.E.O. would no longer be removable for at least four years. [DE 1 at 2].

On April 15, 2025, ICE contacted K.E.O. to alert to her that ICE was planning to remove her GPS monitor. [DE 1 at 9]. On April 24, 2025, K.E.O. reported to the ICE office in Indianapolis and had her GPS monitor removed. [DE 1 at 9]. There, K.E.O. was informed that she would not be deported until she was no longer nursing her infant daughter, which she was still doing on the medical advice of her daughter's pediatrician. [DE 1 at 9, 10]. The next day, ICE called K.E.O. to let her know that the removal of the GPS monitor was a mistake and ordered her to return to the ICE office to have the GPS reinstated on April 28, 2025. [DE 1 at 10]. Upon arrival, ICE officers arrested K.E.O. and transported her to an ICE facility. K.E.O. was not provided with any notice or

documents justifying her detention or the termination of OSUP. [DE 1 at 10]. In June 2025, while in ICE Custody, an immigration judge determined that K.E.O. has a reasonable fear of return to Mexico and ordered full proceedings on this claim.[1] [DE 1 at 11]. The immigration judge ordered that K.E.O. be placed in "withholding-only" proceedings[2] during this time. [DE 1 at 11].

K.E.O. now seeks a Petition for Writ of Habeas Corpus against Jason Woosley, the Grayson County Jailer; Samuel Olson, the Field Officer Director for U.S. Immigration and Customs Enforcement; and Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security.

Prior to moving to the merits of K.E.O.'s petition, Respondents assert that this Court does not have jurisdiction.

## II.     Jurisdiction

### A.     Standard

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Additionally, district courts within the Sixth Circuit do not have jurisdiction to decide claims that arise from an Executive Branch decision to "*execute* a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 282-83 (6th Cir. 2020) (emphasis added).

"A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025)(citing 28 U.S.C. § 2241(c)(3)). Although the Court "may not review discretionary decisions made by immigration authorities, it may review

---

[1] Decisions of immigration judges are not reported in any specific reporter, as they are located under the Attorney General within the Executive Office of Immigration Review. Reviews on appeal are handled by the Board of Immigration Appeals.

[2] "Withholding-only" proceedings are a limited proceeding involving noncitizens subject to either expedited removal and noncitizens subject to reinstatement of prior orders of removal, who have a reasonable fear of persecution or torture. *See* 8 C.F.R. § 1208.2(c)(2); *See also*, MANUAL FOR IMMIGR. CT. 7.4(h).

immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B. Discussion

Respondents contend that this Court lacks jurisdiction to review K.E.O.'s claims. [DE 8 at 185-86]. Specifically, Respondents contend that 8 U.S.C. § 1252(g) "'strips district courts of jurisdiction over any cause or claim by or on behalf of any alien[3] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'" and because this case "arises out of the arrest of Petitioner for the execution of a removal order against her" this Court lacks jurisdiction to hear this case. [DE 8 at 186]. In the alternative, Respondents contend that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction because K.E.O.'s arrest is an "'action taken . . . to remove an alien from the United States.'" [DE 8 at 186]. Both arguments are misstatements of the law and review requested by Petitioner.

In *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)). And the Supreme Court has also rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general

---

[3] The U.S. Code, Federal Regulations, and the United States still use the term "alien." The Court prefers the use of "noncitizen" and will use that term unless directly quoting from a source.

4

jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

As K.E.O. states, her petition is not "challenging the execution of her removal order; it challenges her unlawful arrest and detention." [DE 10 at 156]. The petition challenges "her arrest, the detention that flowed form the arrest, and the deficient process and procedures ICE employed" in the detention. [DE 10 at 156]. Respondents, in their post-hearing brief, argue that "K.E.O.'s supervised release was revoked to execute an order of removal, and thus is not subject to judicial review of the sort Petitioner seeks." [DE 17 at 241]. Respondents then cite to a different trial court, from Louisiana, to emphasize this point. [DE 17 at 241] (citing to *Westley v. Harper*, 2025 WL 592788, at *4-5 (E.D. La. Feb. 24, 2025)).

The Louisiana district court, however, expresses a minority view on this issue and there is controlling precedent in the Sixth Circuit that this Court is bound to follow. In *Hamama v. Adduci,* which involved similar challenges to jurisdiction that Respondents make here, the Sixth Circuit, *and the United States*, both agreed that "the district court had jurisdiction over the detention-based claims and that this jurisdiction is an independent consideration that is not tied to whether the district court has jurisdiction over the removal-based claims." 912 F.3d 869, 877 (6th Cir. 2018). Additionally, other district courts, have agreed with the position that district courts retain jurisdiction to review issues of detention in situations like the one K.E.O. describes here. *See Maldonado*; *Karki v. Jones*, 2025 WL 1638070, *8 (S.D. Ohio June 9, 2025); *Zhu v. Genalo,* 2025 WL 2452352, at *3-4 (S.D.N.Y. Aug. 26, 2025); *Orellana v. Baker*, 2025 WL 2444087, *3 (D. Md. Aug. 25, 2025) (holding that because "Orellana does not ask this Court to enter an order staying ICE's execution of his removal order" but instead "Orellana challenges the legality of his detention pending the effectuation of his removal order. This Court has jurisdiction to evaluate this challenge.") The briefing makes clear that K.E.O. is seeking to "challenge the legality" of her

detention, not the execution of her removal. As a result, the Court has proper jurisdiction and addresses the merits of K.E.O.'s petition.

### III. Discussion

K.E.O. contends that she was wrongfully detained in violation of the Administrative Procedures Act, the Fifth Amendment of the United States Constitution, and the Fourth Amendment of the United States Constitution. [DE 1 at 15-18].

#### A. Relevant Immigration Framework

Both parties agree that K.E.O. is currently detained pursuant to 8 U.S.C. § 1231(a).[4] First, Section 1231 is titled "Detention and removal of aliens ordered removed." Section 1231 generally governs the process for when noncitizens are detained, issued an order of removal, and subject to removal and supervision. To help effectuate this statute, regulations were promulgated under Section 1231. Those regulations are primarily found at 8 C.F.R. § 241.4, and a cross-reference in 8 C.F.R. § 241.13. When interpreting a statute and its regulations, it is a core maxim of statutory interpretation that "[w]e generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid 'denying effect to a part of a statute,' we accord 'significance and effect to every word.'" *United States v. Giraud*, 2025 WL 2416737, at *10 (D. N.J. Aug. 21, 2025) (quoting *Rake v. Wade*, 508 U.S. 464, 471-72 (1993)).

8 C.F.R. § 241.4, which is titled, "Continued detention of inadmissible, criminal, and other aliens beyond the removal period" helps explain the process for removal and states that certain ICE officials have the "authority to continue an alien in custody or grant release or parole" based upon enumerated factors. 8 C.F.R. § 241.4(a). Notably, the regulations state that a copy of any decision by the "Executive Associate Commissioner," the "district director," or the "Director of

---

[4] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 241, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

the Detention and Removal Field Office" "to release or to detain an alien shall be provided to the detained alien," and any such detention decision must "briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). To be put on an OSUP, the noncitizen must "demonstrate [] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such [noncitizen's] removal." 8 C.F.R. § 241.4(d)(1).

Another section relevant to the Court's analysis relates to a noncitizen "who has been released under an order of supervision or other conditions of release" and then "violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The regulation states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and then "[t]he alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id*. Absent the noncitizen's violation of their conditions of release, in very limited circumstances, certain ICE officials have the "authority, in the exercise of discretion, to revoke release and return to [ICE] custody an alien previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). The statute provides four circumstances where this is appropriate:

> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

These regulations are still limited by the Constitution. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) (holding that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.")

7

Lastly, the Court must also look at 8 C.F.R. § 241.13. which cross references 8 C.F.R. § 241.4.

In full, 8 C.F.R. § 241.13(a) states:

This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a).

This section only applies when it has been a determined that "there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1). If that occurs, ICE may revoke that release upon either a violation or if "changed circumstances" have led to a determination that "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). If ICE intends to revoke this release, they must do the following: (1) "[u]pon revocation, the alien will be notified of the reasons for revocation"; (2) ICE "will conduct an initial informal interview promptly after. . . return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification"; and (3) allow that "[t]he alien may submit any evidence or information" to demonstrate there is no "significant likelihood" of removal in the "reasonably foreseeable future," or that the noncitizen "has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

  **B. Application to K.E.O.**

K.E.O. contends, among other things, that her detention violates the APA and her Fifth Amendment right to Due Process because ICE revoked "K.E.O.'s OSUP without notice or an opportunity to be heard" in violation of 8 C.F.R. §§ 241.4(1), 241.13(i), and the U.S. Constitution. [DE 1 at 3]. She asserts this violates the Fifth Amendment because the "guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-*

8

*Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001); *See A.A.R.P. v. Trump*, 145 S.Ct. 1364, 1367 (2025) (holding that the Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings). Specifically, K.E.O. argues that her detention on April 28, 2025 "lacked the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution." [DE 1 at 14]. And that she has a "regulatory right to an explanation for the reasons of revocation as well as an interview to contest the basis for the revocation." [DE 1 at 13].

In the *United States v. Accardi*, the Supreme Court held that when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. 266, 268 (1954). This also applies to agencies own internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974). To prove an *Accardi* claim, and a violation of Due Process, the claimant must also "demonstrate prejudice resulting from the violation." *Am. Farm Liens v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970). But prejudice may be presumed when "compliance with the regulation is mandated by the Constitution" and "where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

In their post hearing brief, Respondents state that "K.E.O. has no entitlement to the notice and interview requirements of 8 C.F.R. § 241.4(*l*)(1), as her supervision was revoked under 8 C.F.R. § 241.4(*l*)(2)." [DE 17 at 243]. Respondents assert:

> 8 C.F.R. § 241.4(l)(1), addressing revocation for violation of conditions of release, requires that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole", and that "[t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). By contrast, 8 C.F.R. § 241.4(l)(2), dealing with discretionary revocation including where "[t]he purposes of release have been

9

> served", "or any other circumstance", does not require notification of reasons for revocation, or an interview for response. 8 C.F.R. § 241.4(l)(2).

[DE 17-4].

But Respondents cite no authority for this proposition and the Court can find none. In fact, the caselaw is directly to the contrary. In three recent cases, *Ceesay v. Kurzdorfer*, 2025 WL 1284720 (W.D.N.Y. May 2, 2025); *Orellana v. Baker*, 2025 WL 2444087 (D. Md. Aug. 25, 2025); *Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025) each respective court reviewed the nearly identical arguments made by the United States in near identical situations to K.E.O. In each scenario, the court found the United States' argument flawed. The United States essentially argues that ICE must follow certain procedures if it revokes a noncitizen's release pursuant to (*l*)(1) but not to (*l*)(2). Yet, (*l*)(2) overlaps with (*l*)(1) with respect to the circumstances when a violation results from a condition of the OSUP as the basis for revoking release. "This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal." *Zhu*, 2025 WL 2452352, at *6. The *Ceesay* court held the same, stating that it "does not make sense" for (*l*)(2) and (*l*)(1) to "provide two entirely different tracks for revocation." *Ceesay*, 2025 WL 1284720, at *18 n.25.

Courts within this Circuit have come to the same conclusion. In *Zhen v. Doe*, the Court found that although petitioner's release was revoked pursuant to (*l*)(2) there are certain procedural requirements when revoking supervision pursuant to § 241.4, "including "notif[ying] [her] of the reasons for [the] revocation [and] . . . her return to [ICE] custody," and "afford[ing] her an opportunity to respond to the reasons for revocation stated in the notification," 2025 WL 2258586 at *10 n.19 (N.D. Ohio Aug. 7, 2025) (quoting *Jimenez v. Cronen*, 317 F.Supp. 3d 626, 652 (D. Mass. 2018)). Moreover, the United States' own actions in other jurisdictions also belie their arguments. In *Barrios v. Ripa*, the United States effectuated re-detention of a noncitizen pursuant to (*l*)(2) and promptly "afforded an informal interview." 2025 WL 2280485, at *2 (S.D. Fla. Aug.

10

8, 2025). This was not the only case or jurisdiction where the United States has done this. *See, e.g., Medina v. Noem*, 2025 WL 2306274, at *2 (D. Md. Aug. 11, 2025); *Tanha v. Warden, Baltimore Detention Facility*, 2025 WL 2062181, at *1-2 (D. Md. July 22, 2025); *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *1 (D. Mass. July 24, 2025). The plain text necessitates that any re-detention under Section 241.4 requires notice and informal interview, because "courts should give " 'every clause and word of a statute' ... meaning." *Giraud*, 2025 WL 2416737, at *10 (quoting *United States ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 432 (2023)).

The record establishes that K.E.O.'s re-detention on April 28, 2025, lacked the procedural protection afforded to her and thus violated her procedural due process rights. Petitioner writes, and Respondent does not rebut that K.E.O. was "told she could not contest ICE's decision" and she was "given no copies of any document providing a notice of or justification for the termination of her supervised release pursuant to her OSUP." [DE 1 at 9]. Additionally, neither K.E.O. nor counsel, was "provided with any documentation, including an administrative warrant or detainer, that explained the basis for her removal supervision and detention." [DE 1 at 9]. This contradicts the plain text of Section 241.4(*l*)(1) which directly provides that the noncitizen will be notified of the reasons for their revocation "upon revocation." 8 C.F.R. § 241.4(*l*)(1). And that the noncitizen would be afforded an initial interview "promptly." 8 C.F.R. § 241.4(l)(1). By failing to do these actions, ICE has necessarily "violate[d] due process because it thwarts [petitioner's] ability to contest that action." *Orellana*, 2025 WL 2444087, at *6; *Waldron v. Immigr. & Naturalization Serv.,* 17 F.3d 511, 518 (2d Cir. 1993) (holding that failing to follow certain Immigration regulations violated due process when the regulations were "promulgated to protect a fundamental right derived from the Constitution.").

Additionally, as referenced above, it is permissible that K.E.O. was subject to 8 C.F.R. § 241.13. Based upon the Immigration Judge's finding that K.E.O. has a reasonable fear

11

of returning to Mexico and be placed in holding for proceedings to allow for a full hearing, her removal was not imminent. And thus, there was "no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(a), (b)(1). If applicable, those regulations *also* require that the noncitizen "be notified of the reasons for revocation" and that ICE will "will conduct an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. ICE has violated their own regulations and thus, violated K.E.O.'s right to due process. *Orellana*, 2025 WL 2444087, at *7 (holding the same); *Zhu*, 2025 WL 2452352, at *9 (holding that "ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights.").

After these proceedings were initiated, the United States appeared to recognize that K.E.O. is entitled to a Notice of Revocation of Release "pursuant to authority delegated by regulation" [DE 17 at 240][5] and attempted to correct the deficiencies laid out by Petitioner. The Court directed the parties to explain what effect this Notice has on the proceedings. K.E.O. states simply that the "answer is none." [DE 18 at 246].

Recently, the United States provided to the Court K.E.O.'s Notice of Revocation of Release dated August 1, 2025 (the "Notice"), allegedly pursuant to 8 C.F.R. § 241.4(*l*). [DE 19-1 at 254]. However, K.E.O.'s revocation of release was executed on April 28, 2025, not August 1, 2025. The pertinent regulation, which the Notice references, provides that "*Upon revocation*, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly . . ." 8 C.F.R. § 241.4(*l*)(1). As K.E.O. notes, a three plus

---

[5] Yet, the United States contradicts this statement three pages later, stating "K.E.O. has no entitlement to the notice." [DE 17 at 243].

month gap is not "upon revocation" as required. Although there is no clear definition of "upon revocation," courts have admonished Respondents in other cases for waiting twenty-seven days to provide notice and an interview. *M.S.L., v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (stating that twenty-seven days "cannot reasonably be construed as "prompt"" and credits the Respondents for not even "attempt[ing] to argue that."). As a result, the ninety days elapsed in this case without notice is neither "upon revocation" nor "prompt" as required by the statute and implementing regulation. "Upon revocation" *would* have been on April 28, 2025. As a result, the August 1, 2025, documents fail to cure the regulatory deficiencies set forth above. By eventually providing K.E.O. with this Notice, Respondents evidently, knew about their requirements and presumably had the opportunity to provide this Notice to K.E.O. upon her revocation. But they failed to do so. And in turn, violated their own regulations.

Immigration statutes are complex. The Court acknowledges that the United States has broad discretion to enforce immigration laws and, possibly, to revoke Petitioner's Order of Supervision. But it must follow the law and give every word in the applicable statutes and regulations their full meaning. This includes both the "requirements of its own regulations and the Due Process Clause." *Zhu*, 2025 WL 2452352, at *9. In this instance, ICE and the United States failed to do so, and thus violated their own regulations and the due process clause.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"); *Nguyen v. Hyde*, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (holding that because ICE violated "its own regulations. . . [petitioner's] detention is unlawful and that his release is appropriate"); *Rombot v. Souza*, 296 F.Supp. 3d 383, 389 (finding that because ICE's detention failed to follow due process, the court ordered release "pursuant to the conditions in [petitioner's] preexisting

13

Order of Supervision.") The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, Petitioner must be released.

## IV.   Conclusion

For the reasons stated above, ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights. The Court **GRANTS** K.E.O.'s Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** her immediate release. The United States is directed to release Petitioner K.E.O. from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **September 5, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

September 4, 2025